# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

472

CAF 11-02448

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

---

IN THE MATTER OF JOSEPH A.T.P.
------------------------------------------------
NIAGARA COUNTY DEPARTMENT OF SOCIAL SERVICES,      MEMORANDUM AND ORDER
PETITIONER-RESPONDENT;

JULIA P., RESPONDENT-APPELLANT.
(APPEAL NO. 1.)

---

DEBRA D. WILSON, LOCKPORT, FOR RESPONDENT-APPELLANT.

SUSAN M. SUSSMAN, NIAGARA FALLS, FOR PETITIONER-RESPONDENT.

THOMAS J. CASERTA, JR., ATTORNEY FOR THE CHILD, NIAGARA FALLS.

---

Appeal from an order of the Family Court, Niagara County (David E. Seaman, J.), entered November 23, 2011 in a proceeding pursuant to Social Services Law § 384-b. The order, among other things, transferred the guardianship and custody of the subject child to petitioner.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: In these consolidated appeals, respondent mother appeals from orders that terminated her parental rights with respect to three of her children. Following an evidentiary hearing, Family Court determined that the mother is presently and for the foreseeable future unable to provide proper and adequate care for her children by reason of her mental retardation (*see* Social Services Law § 384-b [4] [c]; [6] [b]; *Matter of Michael F*., 16 AD3d 1116, 1116). We reject the mother's contention that petitioner failed to meet its burden of proof at the fact-finding hearing. At the hearing, petitioner relied largely upon the testimony of a psychologist who conducted a court-ordered evaluation of the mother. The psychologist testified that the mother functioned at a very low level and that her IQ score of 63 placed her in the first percentile. The psychologist further testified that the mother's low IQ had remained unchanged over time, and he explained that it is highly unusual for an IQ score to change dramatically absent some type of trauma. According to the psychologist, the mother had a "documented history of mental retardation dating back to her early childhood." With regard to the effect of the mother's diminished capacity on the children, the psychologist concluded from his evaluation that the mother lacked a "basic intellectual understanding of the needs of a child" and that

she is unable to "recognize and identify fundamental tasks of parenting." He further testified that, despite the services made available to the mother, she demonstrated "very little improvement in her functioning effectively as a parent." Although the mother testified that she appropriately cared for the children and presented the testimony of family members to that effect, she "failed to present any contradictory expert evidence" with respect to her intellectual capacity (*Matter of Darius B. [Theresa B.]*, 90 AD3d 1510, 1511). We thus conclude that petitioner established by clear and convincing evidence that the mother is mentally retarded and that, as a result thereof, she is unable to provide proper and adequate care for her children now and in the foreseeable future (§ 384-b [4] [c]).

We reject the mother's further contention that the court erred in denying her request for posttermination visitation with the subject children, inasmuch as the courts are without authority to direct continuing contact between parents and children once parental rights have been terminated pursuant to Social Services Law § 384-b (*see Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 437-438; *Matter of Elsa R. [Gloria R.]*, 101 AD3d 1688, 1688, *lv denied* 20 NY3d 862).

Entered: June 14, 2013                    Frances E. Cafarell
                                          Clerk of the Court